IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LEXINGTON INSURANCE COMPANY,**

    **Plaintiff,**

v.                                                             CIVIL ACTION NO. 1:22-CV-158
                                                                                          (KLEEH)

**PROGRESSIVE COMMERCIAL CASUALTY COMPANY and
PROGRESSIVE PREFERRED INSURANCE COMPANY,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [ECF NO. 6]**

On June 9, 2022, the plaintiff, Lexington Insurance Company ("Lexington"), commenced this declaratory action against the defendants, Progressive Commercial Casualty Company and Progressive Preferred Insurance Company (collectively, "Progressive"), in the Circuit Court of Doddridge County, West Virginia [ECF No. 1-3]. After Progressive removed the case to this Court [ECF No. 1], Lexington moved to remand the case to state court [ECF No. 6]. For the reasons that follow, the Court **GRANTS** Lexington's motion [ECF No. 8].

**I.  Background**

**A.  Underlying Action**

This case arises out of a contract between entities which are not parties to this litigation. Bennett International Logistics, LLC ("Bennett") is a licensed broker that arranges for interstate

**LEXINGTON INS. CO. V. PROGRESSIVE                              1:22CV158
COMMERCIAL CAS. CO. ET AL.**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [ECF NO. 6]**

transport of goods on behalf of its clients [ECF No. 1-3 at ¶ 4]. KTK Transport, LLC ("KTK") is an interstate contract motor carrier and Tamal Temirov ("Mr. Temirov") is its employee. Id. at ¶¶ 5-6.

In 2018, Bennett and KTK entered a contract wherein KTK would transport freight, an Exterran Dethanier Reflect Drum, from Broken Arrow, Oklahoma to West Union, West Virginia. Id. at ¶¶ 7-8. KTK assigned Mr. Temirov as the driver on this contract. Id. at ¶ 9. When he took possession of the freight in Oklahoma on March 29, 2019, it was in good condition. Id. at ¶¶ 9-10. But, because it was negligently secured, the freight was damaged in transit. Id. at ¶¶ 11-12. Mr. Temirov delivered the freight to West Union, West Virginia on April 2, 2019. Id. at ¶ 14. The location of the damage and the freight's packaging prevented the discovery of any defect, and the bill of lading was signed. Id. at ¶ 15. Within the next day, it was discovered that the freight had been damaged in the amount of $59,209.36. Id. at ¶¶ 16-17.

At all times relevant, Bennett maintained an insurance policy through Lexington, the plaintiff in this case. Id. at ¶¶ 18-20. Meanwhile, KTK maintained an insurance policy through Progressive, the defendants in this case. Id. at ¶¶ 26-28.

On June 11, 2020, as subrogee for Bennett, Lexington sued KTK and Mr. Temirov in the Circuit Court of Doddridge County, asserting liability under 49 U.S.C. § 14706 and negligence. Id. at ¶ 21.

Neither party defended against these claims, and the state court granted Lexington's motion for default judgment on February 10, 2021. Id. at ¶ 23. The state court awarded Lexington "$59,209.39 in damages, plus pre-judgment and post-judgment interest at the applicable rates and the cost of the action." Id.

**B.   Declaratory Action**

On June 9, 2022, Lexington commenced this action in the Circuit Court of Doddridge County, West Virginia [ECF No. 1-3]. As a judgment creditor of KTK and Mr. Temirov, Lexington seeks a declaratory judgment requiring Progressive to pay the amount due under the 2021 default judgment on behalf of its insured. Id. Progressive removed the case to this Court on the basis of diversity jurisdiction [ECF No. 1]. Thereafter, Lexington moved to remand this case to state court [ECF No. 6]. This motion is fully briefed and ripe for decision.

**II.   Discussion**

A party may remove to federal court any state "civil action where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. §§ 1332(a), 1441(a). When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (4th Cir. 1994). "Federal

Case 1:22-cv-00158-TSK   Document 15   Filed 03/28/23   Page 4 of 12   PageID #: 111

LEXINGTON INS. CO. V. PROGRESSIVE                                 1:22CV158
COMMERCIAL CAS. CO. ET AL.

MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [ECF NO. 6]

courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." Id. Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331 and (2) those involving diversity of citizenship under 28 U.S.C. § 1332.

When a party seeks removal based upon diversity of citizenship, that party bears the burden of establishing "the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332. "Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction," Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted), and must resolve all doubts about the propriety of removal in favor of remanding the case to state court. Hartley v. CSX Transp., Inc., 187 F.3d 422, 425 (4th Cir. 1999).

Here, the parties do not dispute that Progressive timely removed this case from state court or that they are diverse [ECF Nos. 6, 8]. Accordingly, the only question for the Court is whether the amount in controversy requirement has been satisfied.

A.   Applicable Law

An action must be fit for federal adjudication at the time

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

the removal petition is filed. See 28 U.S.C. § 1441(a); Moffitt v. Residential Funding Co., LLC, 604 F.3d 156, 159 (4th Cir. 2010). If the complaint does not contain a specific amount of damages or amount in controversy, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013) (quotation omitted); see also Zink v. Doe, 2014 WL 1725812, at *2 (N.D.W. Va. May 1, 2014) ("In order to meet the preponderance of the evidence standard and establish that removal is proper, a defendant must show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount.").

"Evidence establishing the amount is required . . . only when the plaintiff contests, or the court questions, the defendant's allegation." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014). "To resolve doubts regarding a defendant's asserted amount in controversy, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 194 (4th Cir. 2017) (quoting Dart, 574 U.S. at 88). The determination of whether the amount in controversy is satisfied is left to the Court's "common sense." Mullins v. Harry's Mobile Homes, Inc., 861 F.

Supp. 22, 24 (S.D.W. Va. 1994).

"The question is not what damages the plaintiff will recover, but what amount is in controversy between the parties." Lanier v. Norfolk S. Corp., 256 F. App'x 629, 631-32 (4th Cir. 2007). "When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to show what the stakes of litigation are given the plaintiff's actual demands." Scott, 865 F.3d at 194. If the action seeks declaratory or injunctive relief, the amount in controversy is measured by the "value of the object of the litigation." Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 347 (1977). This is measured by "the pecuniary result to either party which [a] judgment would produce." Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002) (quoting Gov't Emps. Ins. Co. v. Lally, 327 F.2d 568, 569 (4th Cir. 1964)).

**B.   Amount in Controversy**

In this case, Progressive must prove that the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence. As Lexington seeks declaratory judgment the amount in controversy is measured by the value of the object of the litigation. See Hunt, 432 U.S. at 347. It has asked the Court to determine whether the insurance policy issued by Progressive to KTK provides coverage for the damages awarded by the 2021 default judgment. Thus, the amount that Progressive would

be required to pay to satisfy this judgment is object of this litigation and the amount in controversy.

According to Progressive, "[t]he amount in controversy, including the award of the default judgment pre and post judgment interest, and the demanded attorney fees, costs, and additional unspecified relief, exceeds $75,000" [ECF No. 1 at 2]. Lexington contends, however, that the amount in controversy does not exceed the jurisdictional threshold because it was awarded only $59,209.36, the associated interest and costs do not increase the award above $75,000, and attorneys' fees cannot be awarded or are speculative [ECF No. 6 at 2-3].

In the 2021 default judgment, the state court found that "[Lexington] is entitled to judgment against [KTK and Mr. Temirov] in the amount of $59,209.39 in damages, plus pre-judgment and post-judgment interest at the applicable rates and cost of the action" [ECF No. 1-3 at 11]. In its response to Lexington's motion, Progressive calculated the amount of interest accrued as of the date of removal [ECF No. 8 at 2]. Pre-judgment interest is calculated at a rate of 5.5%[1] from the date the cause of action accrued through the date the final judgment was entered. Id. Here, $6,664.70 in pre-judgment interest accrued between the date

---

[1] The pre-judgment interest rate is determined by an Administrative Order of the West Virginia Supreme Court of Appeals entered January 3, 2019. Id.

of the incident, April 2, 2019, and the date the state court entered default judgment, February 20, 2021. Id. Post-judgment interest is calculated on the total judgment, including accumulated interest, at a rate of 4%[2] from the date the judgment is entered. Id. Here, $4,829.56 in post-judgment interest accrued between February 20, 2021, and December 21, 2022, the date Progressive removed this case.[3] Id. Thus, with interest, the amount of damages due under the 2021 default judgment increases to $70,703.62. Id.

Lexington does not dispute this calculation [ECF No. 9 at 1-2]. Therefore, at the time of removal, the amount in controversy was at least $70,703.62. The question then becomes whether any other damages exist that might bridge the gap between the damages awarded and the jurisdictional threshold.

Progressive contends that the amount in controversy also comprises the "costs" awarded in the 2021 default judgment, which would include Lexington's attorneys' fees in the underlying action [ECF No. 8 at 3-6]. But the judgment awards an indeterminate amount of costs and there is no evidence in the record to indicate what Lexington's costs in the underlying litigation might have

---

[2] The post-judgment interest rate is determined by an Administrative Order of the West Virginia Supreme Court of Appeals entered January 24, 2021. Id.
[3] Although post-judgment interest will continue to accrue, the amount in controversy requirement must be satisfied at the time the removal petition is filed. See Moffitt, 604 F.3d at 159.

**LEXINGTON INS. CO. V. PROGRESSIVE COMMERCIAL CAS. CO. ET AL.**  1:22CV158

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [ECF NO. 6]**

been. Further, under West Virginia law, attorneys' fees are not considered "costs" and are not recoverable as such. See Kincaid v. Morgan, 425 S.E.2d 128, 134 (W. Va. 1992) (citations omitted). For these reasons, the Court does not include Lexington's costs or attorneys' fees from the underlying action in its amount in controversy calculation.

Progressive also contends that the attorneys' fees that Lexington might recover in this declaratory action raises the amount in controversy above $75,000. The Court may include attorneys' fees in the amount in controversy only if they are specifically provided for in the state statute or contract at issue. See Mo. State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933). In support of its argument, Progressive relies on West Virginia Code § 55-13-10, the Uniform Declaratory Judgment Act, which provides that a court may award "costs as it may seem equitable and just." This statute, however, does not specifically authorize attorneys' fees and, as discussed above, attorneys' fees are not considered costs under West Virginia law. It is therefore unlikely that Lexington could be awarded attorneys' fees under § 55-13-10 in this case.

Progressive next relies on cases awarding attorneys' fees to prevailing claimants in insurance declaratory actions to argue that Lexington might be entitled to the same relief here. "Where

9

**LEXINGTON INS. CO. V. PROGRESSIVE**  1:22CV158
**COMMERCIAL CAS. CO. ET AL.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

a declaratory judgment action is filed to determine whether an insurer has a duty to defend its insured under its policy, if the insurer is found to have such a duty, its insured is entitled to recover reasonable attorney's fees arising from the declaratory judgment litigation." Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 329, 352 S.E.2d 73, 79 (1986), holding modified by Miller v. Fluharty, 201 W. Va. 685, 500 S.E.2d 310 (1997) (quoting Syl. Pt. 2, Aetna Casualty & Surety Co. v. Pitrolo, 342 S.E.2d 156 (W. Va. 1986)). This rule was adopted "in recognition of the fact that, when an insured purchases a contract of insurance, he buys insurance—not a lot of vexatious, time-consuming, expensive litigation with his insurer." Id. Thus, in a declaratory action in which an insurer refuses to settle a claim without just cause and the claimant is forced to bring suit, a prevailing claimant is entitled to attorneys' fees.

But this case presents a much different scenario. Lexington is not a claimant suing to enforce its insurance policy. Instead, it is a judgment creditor attempting to recover damages under its creditor's insurance policy. It is therefore unclear whether Lexington could recover attorneys' fees in this case and Progressive has not identified any case in which a court has awarded attorneys' fees to a judgment creditor in a similar situation. Accordingly, these fees are excluded from the Court's

**LEXINGTON INS. CO. V. PROGRESSIVE**                                          **1:22CV158**
**COMMERCIAL CAS. CO. ET AL.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 6]**

amount in controversy calculation.

Even if attorneys' fees were available under West Virginia law, "[a]t this stage of litigation, . . . an estimate of attorneys' fees is pure speculation, and thus, on this record, cannot be used to augment the amount-in-controversy calculation." See Bartnikowski v. NVR, Inc., 307 F. App'x 730, 736 n.12 (4th Cir. 2009). Accordingly, the Court cannot determine whether any hypothetical attorneys' fees that Lexington might recover in this case would bridge the gap to satisfy the amount in controversy requirement.

In conclusion, the total amount in controversy is $70,703.62. Because Progressive has not demonstrated by a preponderance of the evidence that the amount in controversy exceeds $75,000, the requirements for removal jurisdiction are not satisfied in this case.

### III. Conclusion

For the reasons discussed, the Court concludes that it lacks subject matter jurisdiction and **GRANTS** Lexington's motion to remand [ECF No. 6]. This case is hereby **REMANDED** to the Circuit Court of Doddridge County for all further proceedings.

It is so **ORDERED**.

The Clerk shall transmit copies of this Order to counsel of

record by electronic means and strike this case from the Court's active docket.

Dated: March 28, 2023

*Tom S Kleeh*
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA